IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM NO. 19-00099 DKW-KJM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT |
| vs. | ) | JOHN B. STANCIL'S MOTION TO |
| | ) | RECONSIDER ORDER OF |
| JOHN B. STANCIL (02), | ) | DETENTION PENDING TRIAL; TO |
| | ) | ORDER TEMPORARY RELEASE; |
| Defendant. | ) | TO ORDER RELEASE FROM |
| | ) | PUNITIVE DETENTION; AND/OR |
| | ) | TO MODIFY THE CONDITIONS |
| | ) | OF DETENTION TO PERMIT |
| | ) | JOHN B. STANCIL TO PREPARE |
| _____ | ) | FOR TRIAL |

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT JOHN B. STANCIL'S MOTION TO
RECONSIDER ORDER OF DETENTION PENDING TRIAL; TO
ORDER TEMPORARY RELEASE; TO ORDER RELEASE FROM
PUNITIVE DETENTION; AND/OR TO MODIFY THE CONDITIONS OF
DETENTION TO PERMIT JOHN B. STANCIL TO PREPARE FOR TRIAL

INTRODUCTION

The parties are before the Court on Defendant John B. Stancil's ("Stancil")

Motion To Reconsider Order of Detention Pending Trial; To Order Temporary

Release; To Order Release From Punitive Detention; And/Or To Modify The

Conditions Of Detention To Permit John B. Stancil To Prepare For Trial

("Motion").  ECF No. 885.  The Government filed a Memorandum in Opposition

1

to the Motion on June 28, 2023 ("Opposition").  ECF No. 896.  Stancil filed a

Reply Memorandum on July 7, 2023 ("Reply").  ECF No. 900.

The Court held a hearing on the Motion on July 10, 2023.  ECF No. 903.

Walter J. Rodby, Esq., and Terri L. Fujioka-Lilley, Esq., appeared on behalf of

Stancil.  Mark Inciong, Esq., and Michael Nammar, Esq., appeared on behalf of the

Government.  After carefully reviewing the Motion, Opposition, Reply, and

relevant legal authority, and after hearing the argument of counsel at the July 10,

2023 hearing, the Court GRANTS IN PART AND DENIES IN PART the Motion

as follows.

## DISCUSSION

The Motion seeks the following alternative forms of relief:

(1) reconsideration of detention and release pending trial;

(2) temporary release to permit Stancil to adequately prepare for trial;

(3) a finding that Stancil's pretrial detention violates his right to due process;

or absent such a finding, an order providing Stancil with a laptop for pretrial

discovery and directing the Government and Bureau of Prisons ("BOP") to provide

better access to counsel; and

(4) termination or modification of separation orders concerning Stancil and

his co-defendants; and

The Court addresses each of these requests below.

I.      The Court Denies the Request for Reconsideration of Detention Pending
        Trial.

        The Bail Reform Act governs the detention of a defendant pending trial.  18

U.S.C. § 3142.  Under the Act, a defendant must be detained pending trial where

no condition or combination of conditions will reasonably assure the appearance of

the person as required and the safety of any other person and the community.  *See*

18 U.S.C. § 3142(e)(1); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th

Cir. 2008).  Here, Counts 9, 16, 17, and 19 of the Second Superseding Indictment

each impose a rebuttable presumption against pretrial release.  *See* 18 U.S.C. §

3142(e)(3).  This Court previously found "that there is no condition or combination

of conditions that will reasonably assure the appearance of the defendant as

required and the safety of the community."  ECF No. 97.  The Court reaffirmed

those findings on September 8, 2021, denying Stancil's First Motion to Reconsider

his Detention.  ECF No. 350-51.

> A detention hearing may be reopened before trial if
>
> the judicial officer finds that information exists that was not known to
> the movant at the time of the hearing and that has a material bearing
> on the issue whether there are conditions of release that will
> reasonably assure the appearance of the person as required and the
> safety of any other person and the community.

18 U.S.C. § 3142(f).  Stancil's Motion argues that (i) his good behavior while

incarcerated, and (ii) his proposed additional conditions of release constitute "new

information" for the Court to reconsider its prior decision.

Assuming there is sufficient new information before the Court to warrant reconsideration, the Court's analysis of the Bail Reform Act factors as applied to Stancil has not materially changed.  As set forth in its prior order, the Court finds that, pursuant to 18 U.S.C. § 3142(e)(3)(A) and (B), there is a rebuttable presumption that there is no condition or combination of conditions that will reasonably assure Stancil's appearance and the safety of the community.  Stancil bears the burden of producing evidence to rebut that presumption.  *Hir*, 517 F.3d at 1086.

If a defendant proffers evidence to rebut the presumption, the court considers four factors to determine whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *Id.* (citing 18 U.S.C. § 3142(g)).  "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other

4

evidence relevant to factors listed in § 3142(g)." *Id.* (citation and internal quotation marks omitted).

Upon review, the Court concludes that the facts justifying Stancil's detention have not materially changed. The Court has carefully reviewed Stancil's arguments, including his purported strong family and community ties, his challenges to the weight and sufficiency of the evidence, his personal history and characteristics, and his proposed release conditions. ECF No. 885-1 at 12–26. The Court still finds that the Government has met its burden of establishing that Stancil remains a flight risk and danger to the community, with the result that detention remains appropriate under 18 U.S.C. § 3142.

In addition to the Government's prior fulsome briefs setting forth its arguments for detention, ECF Nos. 23, 340, the Opposition sets forth at greater length the strength of the evidence supporting detention. ECF No. 896 at 16–22. Here, the Government outlines the evidence it intends to show at trial to establish Stancil's role in violent assaults, an attempted murder and murder for hire conspiracy, two chemical weapon attacks, and an armed robbery. *Id.* Additionally, Pretrial Services' recommendation that Stancil be detained has not changed. Accordingly, as this Court found previously, after considering all of the Bail Reform Act factors, the Court finds that there are no conditions or combinations of conditions that will reasonably assure Stancil's appearance and

5

the safety of the community.  The Court therefore denies Stancil's request for reconsideration of detention.

II.     The Court Denies the Request for Temporary Release.

Stancil also moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act.  This section permits the court to temporarily release a defendant if necessary for the defendant's trial preparation:

> [t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

§ 3142(i).  Stancil argues that while temporarily housed in the Special Housing Unit ("SHU"), and even while housed in General Population, he is unable to adequately prepare for trial and review the extremely large amount of electronic discovery that the Government has produced, due to limitations within Federal Detention Center Honolulu ("FDC Honolulu").  ECF Nos. 885-1 at 26–29, 900 at 6–8.

FDC Honolulu has made accommodations to enable Stancil additional library time to review discovery.  Stancil and his various counsel have now had three years to review that discovery and prepare for trial, which does not begin until January, 2024.  Stancil is represented by two attorneys, and particularly now that Stancil has been removed from the SHU and placed in the same Unit as co-

6

defendant Michael Miske ("Miske"), the Court finds that temporary release for trial preparation is not warranted. However, the Court finds that two changes to the current situation are necessary to ensure Stancil's ability to adequately prepare for trial.

First, the Court orders FDC Honolulu to permit Stancil the same laptop privileges the Court previously permitted Miske. *See* ECF No. 193. That is, FDC Honolulu shall allow Stancil to have access to a non-internet connected computer tablet or laptop with word processing capability, containing the discovery, for up to eight hours per day. Stancil's council may use CJA funds to purchase and configure an appropriate laptop. The Court recognizes its very limited ability to direct the daily management of a detention facility, *Bell v. Wolfish*, 441 U.S. 520 (1979), but based upon the record on this Motion, finds that this narrow relief is warranted.

Second, the Court orders the Government to work with FDC Honolulu and all defense counsel to find an immediate solution to the problems, reported by Stancil's counsel, of Stancil's ability to meet with his attorneys. *See e.g.*, ECF No. 885-2 at ¶22. From the Motion and statements made at the hearing, it appears that defense counsel has had difficulty meeting with Stancil, perhaps because another defendant might be having a simultaneous legal or social visit. Stancil's access to counsel cannot depend on whether another defendant is also having a legal or

personal visit.  The Court directs the Government to work with defense counsel

and FDC Honolulu to coordinate a schedule that permits Stancil, as well as his

detained co-defendants (Miske, Dae Han Moon, Preston Kimoto, and Jarrin

Young), to have all of the attorney-client visits they reasonably request.  If this

coordination cannot be accommodated, the parties should promptly advise the

Court.

III.    The Court Does Not Find a Due Process Violation.

Stancil also argues that his continued detention violates his right to due

process.  ECF No. 885-1 at 29–37.  The Court's analysis of this issue is governed

by *United States v. Torres*, 995 F.3d 695 (9th Cir. 2021).  In evaluating whether a

due process violation has occurred, this Court should weigh the following factors:

"(1) the length of the defendant's pretrial detention; (2) the prosecution's

contribution to the delay; and (3) the evidence supporting detention under the Bail

Reform Act."  *Id.* at 708; *see also United States v. Young*, Case No. 19-cr-00099-

DKW-11, 2023 WL 2826234, at *1 (D. Haw. Apr. 7, 2023) (applying the *Torres*

analysis to co-defendant Jarrin Young).  "The point at which detention constitutes

a due process violation requires a case-by-case analysis."  *Id.*

The Length of the Defendant's Pretrial Detention.  Stancil has been detained

since his July 15, 2020 arrest—three years.  The parties and the Court expect this

to approach four years by the conclusion of trial.  There is no question that this factor weighs in favor of finding a due process violation.

The Prosecution's Contribution to the Delay.  The Court does not find that the Government has contributed to the delay in prosecution.  This Court has been extensively involved in discovery management and discovery disputes, including reviewing regular *ex parte* status reports from the Coordinating Discovery Attorney.  The Court agrees with the district court's recent finding that "there is no evidence currently before the Court that the *manner* of the government's discovery production, rather than the *amount* of discovery itself, has contributed to the delay here.  *Young*, 2023 WL 2826234, at *2.  Because the scope of discovery is not the fault of the Government, this factor does not weigh in favor of finding a due process violation.

The Evidence Supporting Detention Under the Bail Reform Act.  *Torres* affirmed that the evidence supporting detention under the Bail Reform Act is a factor to the due process analysis.  995 F.3d at 709.  That is, the Court must continue to assess the § 3142(g) factors in determining whether there is a due process violation.  The Court has now reviewed those factors three times as to Stancil, including on this Motion.  The Court continues to find, after considering the evidence supporting detention under the Bail Reform Act, that there are no conditions or combinations of conditions that will reasonably assure the

Defendant's appearance or the safety of the community. Accordingly, this factor does not weigh in favor of a due process violation.

After carefully considering each of the *Torres* factors, the Court finds no due process violation and denies that part of the Motion.

IV.    The Court Denies the Request to Vacate or Modify Separatee Orders.

Lastly, Stancil asks the Court to vacate or modify the Central Inmate Monitoring ("CIM") separation orders affecting him and his co-defendants. ECF No. 885-1 at 41–44. 28 C.F.R. § 524.72(f) establishes the BOP's authority to separate prisoners if they have "exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution." That section also provides that a facility may designate as separatees those inmates "from whom there is no identifiable threat, but who are to be separated from others at the request of the Federal Judiciary or U.S. Attorneys." This latter provision—a request from the U.S. Attorneys' Office—is the reported reason for the separation orders at issue.

The CIM regulation is silent as to whether the Court has any ability to vacate or modify a separation request by the U.S. Attorneys' Office, and Stancil has not provided the Court with any such authority. Stancil argues that the separation orders violate his Sixth Amendment right to counsel because they prohibit joint defense meetings among all co-defendants and their counsel. ECF No. 885-1 at

10

43–44.  Stancil cites no authority for the proposition that the Sixth Amendment requires the BOP or the Court to facilitate joint defense meetings among co-defendants and their counsel in a RICO conspiracy prosecution.

Stancil instead relies on *United States v. Wegers*, No. CR05-0231C, 2006 WL 753242, at *1 (W.D. Wash. Mar. 20, 2006).  In *Wegers*, the defendant moved "to modify or remove the 'separatee' designation applied to him and his co-defendants who" were "in pretrial detention at FDC SeaTac."  *Id.*  As is the case here, the defendants in *Wegers* were under separation orders implemented under the auspices of 28 C.F.R. § 524.72(f).  *Id.*  The pretrial detainees argued that "their designation impinge[d] on their constitutional rights to effective assistance of counsel before trial" because, among other things, the separation orders prohibited "joint-defense meetings involving all separatees and their respective counsel."  *Id.*

*Wegers* does not support Stancil's position.  In particular, the *Wegers* court rejected the pretrial detainees' constitutional argument, finding that "the Court cannot conclude that the separatee designations give rise to constitutional deprivations or are otherwise improper."  *Id.* at *2.  After emphasizing that the government did not oppose the proposed joint defense meetings, but rather only wanted court authorization on a per-meeting basis, the court directed the parties to engage in discussions to facilitate such meetings rather than "require request-by-request intervention by the Court."  *Id.*  Here, by contrast, the government plainly

11

opposes such meetings, as well as any further modification to the separation order. ECF No. 896at 22–25.

As the Court mentioned at the hearing, neither party has addressed whether Stancil is excused from exhausting his available administrative remedies with the BOP.  Ordinarily, and as this Court has often held, an inmate must proceed through the Administrative Remedy Program "to seek formal review of an issue relating to any aspect of his/her own confinement."  *See* 28 C.F.R. § 542.10(a); *see also*, Bureau of Prisons Program Statement on Administrative Remedy Program, January 6, 2014 available at https://www.bop.gov/policy/progstat/1330_018.pdf. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to *any aspect* of his/her own confinement."  28 CFR § 542.10(a) (emphasis added).  Although the parties have provided the Court with information concerning informal (and much appreciated) attempts at resolving this issue, it does not appear that Stancil has exhausted his available administrative remedies.

Under the BOP grievance process, the inmate must first seek informal resolution of the issue of concern at his institution of confinement.  28 CFR § 542.13.  In this case, the institution is FDC Honolulu.  If no informal resolution is reached, the inmate must file a formal request with the Warden.  28 CFR § 542.14. If the Warden denies a remedy, the inmate may then appeal first to the Regional

Director, within 20 days of receiving the Warden's response, and thereafter to the General Counsel in Washington, D.C., within 30 days of receiving the Regional Director's response. *Id.* § 542.15. A final decision from the Office of General Counsel completes the BOP's Administrative Remedy Process. *Id.* § 542.15(a). Accordingly, the administrative process is not complete until: (1) the Office of the General Counsel replies on the merits to the inmate's appeal, or (2) the response is not forthcoming within the time allotted for reply. *See id.* § 542.18.

Formal review through the administrative process would augment the record and likely clarify the feasibility of the proposed joint defense meetings. For example, the parties have not addressed how often these joint defense meetings might take place, who would participate, where the meetings would occur, or whether FDC guards would be permitted to maintain security in the meetings (and how that would impact the attorney-client privilege). With seven defendants (five detained) and ten attorneys, these meetings would appear to involve significant planning and coordination with FDC Honolulu, and of course a large, secured space. Stancil has not provided any of this information to the Court.

On this record, the Court denies Stancil's request to vacate or modify the separation orders. Stancil has not provided the Court with any authority authorizing it to vacate or modify a separation order. It also appears that Stancil has not exhausted his available administrative remedies regarding his request for

joint defense meetings.  Lastly, the Court has found no authority holding that

pretrial detainees have a right, particularly a constitutional right, to conduct joint

defense meetings with their counsel despite CIM separation orders.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, July 19, 2023.



Kenneth J. Mansfield
United States Magistrate Judge

*USA v. Miske, et al.*, Crim. No. 19-00099 DKW-KJM; Order Granting in Part and Denying in Part Defendant John B. Stancil's Motion To Reconsider Order of Detention Pending Trial; To Order Temporary Release; To Order Release From Punitive Detention; And/Or To Modify The Conditions Of Detention To Permit John B. Stancil To Prepare For Trial